UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:25-cv-05872-AB-E | | Date: | June 30, 2026 |
|---|---|---|---|---|

| Title: | *Shamar Deal v. Gerald Henry, et al* |
|---|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Evelyn Chun | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**      **[In Chambers] ORDER <u>GRANTING</u> DEFENDANT'S MOTION TO DISMISS [Dkt. No. 50]**

Pending before the Court is Defendants Sony Music Entertainment ("Sony") and Empire Distribution, Inc.'s ("Empire") (collectively "Defendants") Motion to Dismiss ("Motion," Dkt. No. 50). Plaintiff Shamar Deal ("Plaintiff") filed an Opposition ("Opp'n," Dkt. No. 52), and Defendant filed a Reply ("Reply," Dkt. No. 54). The Court heard oral argument on June 26, 2026. For the following reasons, the Motion to Dismiss is **GRANTED.**

## I.      BACKGROUND

The following allegations are drawn from Plaintiff's First Amended Complaint ("FAC," Dkt. No. 20).[1] For purposes of the present motion, the Court

---

[1] The complaints filed in the First Action and the Second Action are substantively identical in all material respects. Accordingly, for ease of reference, the Court cites the First Amended Complaint filed in the lower-numbered action unless otherwise noted.

accepts all well-pleaded facts as true.

### A. Factual Background

Plaintiff Shamar Deal is a songwriter, recording artist, and performing artist. FAC ¶ 1. In or around 2019, Defendant Gerreaux composed a sound recording titled "Youu" (the "Beat"). *Id.* ¶ 12. That same year, Defendant Gerreaux uploaded the Beat to Traktain.com, a platform that allows musicians to buy and sell music. *Id.* ¶ 14. On September 23, 2019, Plaintiff entered into a written license agreement with Defendant Gerreaux through the website (the "Agreement"), pursuant to which Plaintiff obtained a ten-year exclusive license to record vocals over the Beat, create a master recording, and exploit that recording. *Id.* ¶¶ 14–15. Under the Agreement, Plaintiff held the exclusive right to use the Beat to create new recordings during the license term. *Id.* ¶ 16.

Notwithstanding this exclusivity, Defendant Gerreaux subsequently licensed the Beat to Defendants Register and Hayes, who used it as the underlying instrumental in their song "Ron Artest." Id. The song achieved substantial commercial success, amassing over 96 million streams on Spotify and more than 16 million views on YouTube to date. *Id.* ¶ 17.

Defendants Register and Hayes later licensed a sample of "Ron Artest"—which prominently features the Beat—to Defendant Carter. *Id.* ¶ 18. Defendant Carter used that sample to create a new song titled "Never Lose Me," along with at least five additional versions. *Id.* ¶¶ 18–19. Collectively, the six versions of "Never Lose Me," all of which incorporate the Beat, have achieved even greater success than "Ron Artest," generating approximately 650 million streams on Spotify and over 50 million views on YouTube. *Id.* ¶ 20.

Defendants Carter, Gerreaux, Register, and Hayes are all credited as co-songwriters on "Never Lose Me," with Defendant Gerreaux additionally credited as the producer. *Id.* ¶ 21. Plaintiff alleges that Defendants never obtained permission to use the Beat in "Ron Artest" or in any version of "Never Lose Me." *Id.* ¶ 22. Both songs are widely available to the public on major streaming platforms, including Spotify, iTunes, and YouTube Music. *Id.* ¶ 23.

With respect to distribution, Defendants Gerreaux, Register, and Hayes entered into an agreement with Empire Distribution to distribute "Ron Artest," and Empire carried out that distribution across digital platforms. *Id.* ¶ 24. Similarly, Defendants Gerreaux, Register, Hayes, and Carter entered into a distribution

CV-90 (12/02)                    **CIVIL MINUTES – GENERAL**                    Initials of Deputy Clerk <u>EVC</u>

agreement with Sony for the various versions of "Never Lose Me," which Sony then distributed on major platforms. *Id.* ¶ 25.

Plaintiff further alleges that, through their exploitation of "Ron Artest" and "Never Lose Me," Defendants have collectively earned well in excess of $1 million to date. *Id.* ¶ 26.

### B. Procedural Background

Plaintiff filed suit on June 27, 2026. Dkt. No. 1. The copyright for the "sound recording" of the Beat was registered with the U.S. Copyright Office in 2025, receiving registration number SR 1-035-649, with an effective date of April 11, 2025. *Id.* ¶ 13. The copyright for the "music" of the Beat was then registered with the U.S. Copyright Office in 2025, receiving registration number PA 0002556422, with an effective date of August 22, 2025. Case No. 2:25-cv-11781, Dkt. No. 1 ("Second Action Complaint") ¶ 13.[2]

Subsequently, on August 25, 2025, Plaintiff filed his First Amended Complaint in Case No. 2:25-cv-05872-AB-E (the "First Action"), asserting a claim for infringement of an alleged sound recording copyright. *See* FAC. Thereafter, on December 12, 2025, Plaintiff filed a separate action in this Court, Case No. 2:25-cv-11781 (the "Second Action"), asserting infringement of the alleged musical composition copyright based on the same underlying works.

The Court subsequently consolidated the two actions. Dkt. No. 43. Following consolidation, Plaintiff's operative pleadings assert two categories of copyright infringement claims: (1) infringement arising from the song "Ron Artest" against Defendants Gerreaux, Register, Hayes, and Empire Distribution; and (2) infringement arising from the song "Never Lose Me" against Defendants Gerreaux, Register, Hayes, Carter, Sony Music Entertainment, and Empire Distribution. FAC at 8–11.

On April 17, 2026, Defendants Sony Music Entertainment and Empire Distribution filed the present Motion to Dismiss, pursuant to Federal Rule of Civil

---

[2] The principal distinction between the two complaints in the two actions is that, in the same paragraph, the First Amended Complaint refers to "[t]he copyright for the sound recording of Youu," whereas the Second Action Complaint refers to "[t]he copyright for the music of Youu." *Compare* FAC ¶ 13 *with* Second Action Compl. ¶ 13.

Procedure 12(b)(6), seeking dismissal of Plaintiff's First Amended Complaint in the First Action and Plaintiff's Complaint in the Second Action. *See generally* Mot.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 8(a)(2) requires a plaintiff to present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough facts "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The complaint must provide the "grounds" of their "entitlement to relief." *Id.* (cleaned up). Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Id.* The complaint must also be "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When considering a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Generally, a court cannot consider evidence outside of the pleadings. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003); *see also Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996) (holding that a Rule 12(b)(6) motion "must be treated as a motion for summary judgment" if either party "submits materials outside the pleadings in support or opposition of the motion, and if the district court relies on those materials"). However, a court may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice." *Ritchie*, 342 F.3d at 908.

## III.   DISCUSSION

### A. Plaintiff's Standing to Sue for Copyright Infringement

"The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law." 17 U.S.C. § 201(d)(1). The Copyright Act established that, "[a] transfer of copyright ownership … is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C.A. § 204(a). The Ninth Circuit has held that "no magic words must be included in the document," which "doesn't have to be the Magna Carta; a one-line pro forma statement will do." *Radio Television Espanola S.A. v. New World Entm't Ltd.*, 183 F.3d 922, 927 (9th Cir. 1999) (citations omitted). "Rather, the parties' intent as evidenced by the writing must demonstrate a transfer of the copyright." *Id.* "The rule is really quite simple: If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so." *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990).

Defendants contend that the Agreement between Plaintiff and Defendant Gerreaux—on which Plaintiff bases his claimed rights in the Beat—is a two-page document dated September 23, 2019. Mot. at 5; Dkt. No. 50-2, Declaration of David M. Given ("Given Decl."), Exh. 1 ("License Agreement"). Although the Agreement purports to be between Plaintiff and Defendant Gerreaux, it is signed not by Gerreaux but by an individual identified as "Nick George." *Id.* Defendants further argue that Plaintiff does not allege George was Gerreaux's duly authorized agent, nor does Plaintiff reference George in either complaint. Mot. at 5. Moreover, Defendants argue that TrakTrain's Terms and Conditions "contain no grant of authority to it to sign transfers of copyright rights," and instead disclaim such authority. *Id.* Defendants urge the Court to take judicial notice of this document. *See* Given Decl., Exh. 2 ("TrakTrain Terms"); *Bodenburg v. Apple*, 146 F.4th 761, 768 n.2 (9th Cir. 2025). Accordingly, Defendants assert that the absence of a license signed by Gerreaux or his authorized agent is a fatal defect that deprives Plaintiff of standing to pursue both actions. *Id.* at 5–6.

In response, Plaintiff argues that the TrakTrain-generated license satisfies § 204(a)'s "modest" writing requirement. Opp'n at 9. First, Plaintiff contends that the electronic signature reflected in the Agreement constitutes a valid signature for purposes of § 204(a). *See id.*; 15 U.S.C. § 7001(a)(1); Cal. Civ. Code § 1633.7(d); *see also Sisyphus Touring, Inc. v. TMZ Prods., Inc.*, 208 F. Supp. 3d 1105, 1113

CV-90 (12/02)                 **CIVIL MINUTES – GENERAL**                 Initials of Deputy Clerk <u>EVC</u>

(C.D. Cal. 2016). Plaintiff further argues that the relevant inquiry is not whether Gerreaux physically signed the TrakTrain-generated document, but whether the copyright owner "executed or adopted" an electronic signing process with the intent to sign the agreement. Opp'n at 12; *see also* 15 U.S.C. § 7006(5); Cal. Civ. Code § 1633.2(h). According to Plaintiff, Gerreaux's conduct—composing the Beat, listing it for exclusive sale on TrakTrain, setting the purchase price, identifying himself by name and email as "Songwriter" and "Licensor" in the resulting license, accepting payment through Stripe, and permitting TrakTrain to generate a written license memorializing the transaction—collectively demonstrates his adoption of the electronic signing process. Opp'n at 11–12. Finally, Plaintiff contends that any dispute regarding whether George acted as Gerreaux's authorized agent presents a factual issue not suitable for resolution on a motion to dismiss, where the Court must accept Plaintiff's allegations as true. *Id.* at 12–13.

The Court does not dispute that electronic agreements may satisfy § 204(a)'s writing and signature requirements under the E-SIGN Act. *See Sisyphus Touring, Inc.*, 208 F. Supp. 3d at 1113. The issue here, however, is not the electronic nature of the licensing Agreement, but the absence of any signature attributable to Gerreaux. Instead, the Agreement bears only the signature of "Nick George," an individual not referenced anywhere in the FAC. So, whole the Agreement includes Gerreaux's name throughout, intending to indicate that the Agreement is between Plaintiff and Gerreaux, it lacks Gerreaux's signature in the most critical area. See generally License Agreement. Accordingly, the Court's analysis turns on the narrower question of whether Gerreaux's alleged conduct—absent any signature or allegation of agency—is sufficient to demonstrate that he "executed or adopted" the electronic record with the intent to sign, as required to satisfy § 204(a).

The Court is not persuaded that Gerreaux's alleged conduct satisfies the standard required to demonstrate that he executed or adopted the electronic record with the intent to sign. Courts have consistently rejected arguments that an unsigned agreement, combined with surrounding conduct, is sufficient to satisfy § 204(a). In *Crispin v. Christian Audigier, Inc.*, the court held that an unsigned written agreement, even when coupled with the plaintiff's acceptance of payment, was insufficient as a matter of law to meet § 204(a)'s requirement of a signed writing. 839 F. Supp. 2d 1086, 1092 (C.D. Cal. 2011). There, although a "Commissioned Artwork/Work for Hire Agreement" had been prepared, the plaintiff never signed it, and the endorsed checks bore no legend referencing the copyrighted work. *Id.* at 1090–91. The court therefore concluded that the alleged transfer did not comply with § 204(a) and was unenforceable. *Id.* at 1091–92.

Similarly, in *Valente-Kritzer Video v. Pinckney*, the Ninth Circuit held that a copyright owner's attorney could not, without the client's signature or express authorization, memorialize a transfer through correspondence alone. 881 F.2d 772, 775 (9th Cir. 1989). These authorities underscore that § 204(a) requires some writing attributable to the copyright owner manifesting intent to transfer.

Plaintiff also argues that Defendants, as alleged third-party infringers, lack standing to challenge the validity of the licensing Agreement under 17 U.S.C. § 204(a). Opp'n at 7–9. In support, Plaintiff relies principally on *Yellowcake, Inc. v. Morena Music, Inc.*, 522 F. Supp. 3d 747, 769 (E.D. Cal. 2021), arguing that California district courts have repeatedly rejected attempts by third-party infringers to invoke § 204(a) to defeat a plaintiff's ownership interest. Defendants respond that *Yellowcake* is distinguishable because it involved competing claims of copyright ownership arising from a common transferor who allegedly transferred the same copyrights twice. Reply at 3 (quoting *Yellowcake*, 522 F. Supp. 3d at 761). Defendants contend that Plaintiff's own allegations—that Gerreaux later licensed the Beat to Register and Hayes despite previously granting Plaintiff an exclusive license—similarly reflect a dispute between Plaintiff and Gerreaux regarding ownership and licensing rights, bringing this case squarely within *Yellowcake*'s rationale. Reply at 3.

At the hearing, however, Plaintiff's counsel distinguished *Yellowcake* on two grounds: first, unlike here, the competing claimant there lacked any written transfer satisfying § 204(a); and second, that allegations of double licensing do not necessarily demonstrate an ownership dispute, as Gerreaux could simply have improperly licensed the Beat a second time despite having previously granted Plaintiff exclusive rights. As highlighted in the Opposition, Plaintiff's counsel also referenced at the hearing a text message exchange between Plaintiff and Gerreaux occurring shortly after the TrakTrain transaction. *See* Opp'n at 18. In those messages, Plaintiff texted Gerreaux, "I bought [the Beat] btw appreciate I think you may have forgot to mark it as sold though," to which Gerreaux responded, "Ahh yes, sorry about that. I didn't see the notification because the payment was through Stripe, but yes! I just changed the status to sold!" *See id.*; Declaration of Larry Zerner ("Zerner Decl.") ¶ 3, Exh. 2. Plaintiff contends these messages demonstrate that Gerreaux acknowledged the sale, recognized Plaintiff as the purchaser of the exclusive license, and therefore confirm there was no dispute regarding the transfer of rights, unlike in *Yellowcake*.

While these messages may support Plaintiff's allegation that Gerreaux intended to sell the Beat exclusively to Plaintiff, they do not resolve the defect

identified by the Court. Therefore, the Court need not decide whether *Yellowcake* is ultimately controlling because, under either party's reading of that decision, Plaintiff has not plausibly alleged facts demonstrating that the Agreement satisfies § 204(a). The dispositive issue is not whether Defendants may invoke § 204(a), but whether Plaintiff has adequately alleged a valid written transfer in the first instance. To be sure, § 204(a) requires a writing signed by the copyright owner or the owner's duly authorized agent, or an electronic record that the owner executed or adopted with the intent to sign. The text messages do not establish that Gerreaux executed or adopted the TrakTrain licensing Agreement itself, nor do they explain why the Agreement bears only Nick George's signature. At most, the exchange reflects Gerreaux's acknowledgment that Plaintiff had purchased the Beat and that its status on TrakTrain should be updated. That acknowledgment, however, is distinct from manifesting assent to the specific written instrument on which Plaintiff's standing depends. Accordingly, the text messages do not cure the deficiencies in Plaintiff's allegations under § 204(a).

While no Ninth Circuit case presents facts identical to those alleged here, the Court is hesitant to infer the requisite intent to transfer in the absence of any signature attributable to Gerreaux on the licensing Agreement. That hesitation is only reinforced by developments at the hearing. Plaintiff's counsel represented that the version of the Agreement originally generated through TrakTrain did not contain Nick George's signature. According to counsel, after Defendants raised the deficiencies identified in the Motion, counsel contacted George and requested that he sign the Agreement after the fact. Rather than strengthening Plaintiff's agency theory, this representation undermines it. A post hoc signature added after litigation commenced does not plausibly demonstrate that George executed the Agreement on Gerreaux's behalf at the time of the alleged transfer, nor does it establish that George was Gerreaux's "duly authorized agent" within the meaning of § 204(a). *See* 17 U.S.C. § 204(a); 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 10.03[A][4] (2026) ("Presumably, being 'duly authorized' requires something much more than casual oral permission."). Indeed, the FAC contains no allegations whatsoever regarding George's identity, authority, or relationship to Gerreaux.

Accordingly, the Court's analysis necessarily turns to Gerreaux's own alleged conduct. Plaintiff argues that Gerreaux adopted the Agreement by uploading the Beat to TrakTrain, listing it for exclusive license, setting the purchase price, accepting payment through Stripe, and permitting TrakTrain to generate the written Agreement. Although the Court agrees that electronic agreements may satisfy § 204(a), the Court is not persuaded that these allegations,

standing alone, plausibly demonstrate that Gerreaux executed or adopted the specific electronic record with the intent to sign it. Unlike the writings at issue in *Sisyphus Touring*, nothing alleged in the FAC links Gerreaux to the execution or adoption of the Agreement itself. At most, Plaintiff alleges conduct consistent with using the TrakTrain platform—not conduct demonstrating assent to the particular written instrument on which Plaintiff's standing depends. Because Plaintiff has failed to plausibly allege either that George was authorized to bind Gerreaux or that Gerreaux himself executed or adopted the Agreement within the meaning of § 204(a), Plaintiff has failed to allege the existence of a valid transfer or exclusive license sufficient to confer standing. The Motion is therefore **GRANTED.**

### A. Leave to Amend

If a motion to dismiss is granted, the court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). A "district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile." *Natl. Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015). The purpose of granting leave to amend is to allow "plaintiff[s] with a meritorious claim to cure any technical defects." *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000). But leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). And "the district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *In re Read–Rite Corp.*, 335 F.3d 843, 845 (9th Cir. 2003) (internal quotations and citation omitted).

Plaintiff has already amended the Complaint once, though not in response to a motion to dismiss. This is therefore Plaintiff's first opportunity to amend to address the deficiencies identified by the Court. While the Court concludes that the FAC fails to allege facts sufficient to establish standing under the Copyright Act, the Court cannot say at this stage that amendment would necessarily be futile. Because it is conceivable that Plaintiff could allege additional facts regarding George's authority or Gerreaux's adoption of the Agreement, the Court grants leave to amend. Any amended complaint must include non-conclusory allegations establishing either a valid signature attributable to Gerreaux or facts plausibly demonstrating an agency relationship.

Accordingly, and consistent with Rule 15(a)'s liberal amendment policy, the Court **GRANTS** Plaintiff leave to amend.

## B. Conclusory Allegations Failing to Provide Adequate Notice

The Court does not reach the merits of Defendants' Rule 12(b)(6) arguments regarding the sufficiency of Plaintiff's infringement allegations, as the FAC is dismissed on standing grounds for the reasons set forth above. Nevertheless, the Court briefly addresses these arguments to provide guidance in the event Plaintiff elects to amend.

Defendants separately argue that Plaintiff fails to state a claim for infringement of either a sound recording or musical composition copyright because the complaints do not identify, with any specificity, the protectable elements allegedly copied. Mot. at 6–8. Defendants contend that Plaintiff's allegations that "Ron Artest" and "Never Lose Me" incorporate the Beat are conclusory and fail to identify any actual sounds fixed in the Beat sound recording allegedly taken, as required under 17 U.S.C. § 114(b). *Id.* Defendants further note that Plaintiff does not provide any time-stamps, descriptions, or other identification of the allegedly copied material and therefore fails to provide fair notice of his infringement theory. *Id.* Defendants rely on authority dismissing similar claims where plaintiffs alleged only unspecified copying of "certain sounds" or generalized similarity without identifying protectable elements. *See, e.g., Grigson v. Lopez*, 2023 WL 4157444, at *5 (C.D. Cal. May 10, 2023).

Plaintiff argues his allegations are sufficient because the complaints assert that "100% of the music" in "Ron Artest" and "Never Lose Me" is derived from the Beat. Opp'n at 14. Plaintiff contends that the allegations describe wholesale copying of the underlying work, not isolated or unspecified elements, and that the publicly available recordings make the basis of his claims apparent upon listening. *Id.* Plaintiff further distinguishes Defendants' authorities on the ground that those cases involved vague allegations of copying of "certain sounds," whereas here Plaintiff alleges complete incorporation of the Beat into the accused recordings. *Id.*

A court may dismiss copyright infringement claims at the Rule 12(b)(6) stage "if it concludes that no reasonable jury could find that the works are substantially similar, or if it concludes that the similarities between the two works pertain only to unprotected elements of the works." *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1131 (C.D. Cal. 2007) (quoting *Boyle v. Stephens, Inc.*, 1998 WL 80175, at *4 (S.D.N.Y.1998)); *see also Christianson v. West Publ'g*, 149 F.2d 202, 203 (9th Cir. 1945); *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1125 (9th Cir. 2018) (dismissing copyright infringement claim on motion to dismiss because the court was capable of comparing two photographs); *Biani v. Showtime Networks,*

*Inc.*, No. 24-3949, 2025 WL 2586647, at \*5 (9th Cir. Sept. 8, 2025) (dismissing copyright infringement claim on motion to dismiss after comparing characters from an online and television show).

To the extent Plaintiff elects to amend, the Court notes that while the FAC's allegations—read in conjunction with the referenced recordings—appear to convey a theory of substantial incorporation of the Beat into the accused works, Plaintiff should nevertheless plead his infringement theories with greater clarity. In particular, Plaintiff should identify, with more precision, the specific elements of the Beat's sound recording and musical composition that are alleged to be reproduced in each challenged work and, where feasible, explain how those elements are incorporated in "Ron Artest" and "Never Lose Me." Such clarification would assist in delineating Plaintiff's theories of sound recording versus musical composition infringement and ensure the pleadings provide clear notice of the basis for each claim. Nothing in this Order should be read to suggest that Plaintiff's claims ultimately fail on the merits of substantial similarity; rather, the Court's concern is limited to the sufficiency of the pleadings in articulating the precise scope of the alleged copying.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's FAC is **GRANTED**. This case is therefore **DISMISSED *without* prejudice and *with* leave to amend**. Should Plaintiff wish to attempt to remedy the defects discussed herein, Plaintiff may file a Second Amended Complaint within twenty-one (21) days of the issuance of this order. In light of the Court's ruling, Defendant Sony Music's Motion to Bifurcate Discovery as to Liability and Damages (Dkt. No. 55) is **VACATED.** Defendant's Motion to Bifurcate may be refiled if Plaintiff files a Second Amended Complaint.

Furthermore, Plaintiff's Motion for Service by Publication (Dkt. No. 66) is also **GRANTED as unopposed**. *See* Dkt. No. 75. Because the Court has granted Plaintiff leave to amend, should Plaintiff file a Second Amended Complaint, the authorization for service by publication shall apply to service of the operative amended complaint without the need for Plaintiff to file a renewed motion.

**IT IS SO ORDERED**.

CV-90 (12/02)                **CIVIL MINUTES – GENERAL**                Initials of Deputy Clerk <u>EVC</u>