Larry Zerner (SBN 155473)
Law Offices of Larry Zerner
1801 Century Park East, Ste. 2400
Los Angeles, CA 90067
(310) 773-3623
Email: Larry@ZernerLaw.com

Attorneys for Plaintiff Shamar Deal

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAMAR DEAL,<br><br>Plaintiff,<br><br>vs.<br><br>GERALD HENRY aka GERREAUX KATANA pka "GERREAUX", an individual, MARCELLUS RAYVON REGISTER pka "BABYFACE RAY", an individual, DION MARQUISE HAYES pka "42 DUGG", an individual, TAMIA MONIQUE CARTER pka "FLO MILLI", SONY MUSIC ENTERTAINMENT, a Delaware corporation, EMPIRE DISTRIBUTION, INC., a business entity form unknown, and DOES 1-10, Inclusive,<br><br>Defendants | Lead Case No.: 2:25–cv–05872-AB-E<br>Case No.: 2:25–cv–11781-AB-E<br><br>SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR COPYRIGHT INFRINGEMENT<br><br><u>DEMAND FOR JURY TRIAL</u><br>(F.R.C.P. Rule 38) |

# I. INTRODUCTION

1. Plaintiff Shamar Deal ("Deal" or "Plaintiff") is a songwriter, recording artist, and performing artist. Defendant Gerreaux is a music producer and composer. In September 2019, Deal purchased from Gerreaux, through the online beat marketplace Traktrain.com ("TrakTrain"), a ten-year exclusive license (through September 2029) to use a beat composed and recorded by Gerreaux titled "Youu" (the "Beat") in recorded music.

2. Deal did not buy the Beat from a stranger through an anonymous portal. Before purchasing, Deal negotiated the purchase directly with Gerreaux by email. Writing from the same email address that appears on the face of the written license agreement (gerreaux575@gmail.com), Gerreaux personally confirmed the price of the exclusive license, writing: "That's probably a mistake that it says $300, I'll change it to $200 right now for you man. Sorry about that!" Deal then purchased the exclusive license for $200 through TrakTrain that same evening. TrakTrain immediately confirmed the purchase in writing — "You have purchased the Exclusive Rights" — and generated a written license agreement identifying Gerreaux by name and email address as the "Licensor." Five days later, Gerreaux confirmed the sale in writing, telling Deal: "Ahh yes, sorry about that. I didn't see

the notification because the payment was through Stripe, but yes! I just changed the status to sold!"

3. Despite having sold Deal the exclusive license to the Beat, in 2023 Gerreaux licensed the Beat to the recording artists Babyface Ray and 42 Dugg, who used the recording of the Beat as the entire instrumental foundation of their track titled "Ron Artest." Empire Distribution distributed "Ron Artest."

4. The recording artist Flo Milli then incorporated the Beat (as a sample from "Ron Artest") in her track titled "Never Lose Me." Gerreaux, Babyface Ray, and 42 Dugg are listed as songwriters on "Never Lose Me," and Gerreaux is credited as its producer. Sony Music Entertainment distributed "Never Lose Me" and at least five additional versions of it.

5. As Plaintiff holds the exclusive right to use the Beat in recorded music, the incorporation of the Beat in "Ron Artest" and "Never Lose Me" infringes Plaintiff's exclusive rights in both the sound recording and the musical composition of the Beat. Deal brings this lawsuit to recover damages for the violation of those rights and to enjoin further infringement.

## II. THE PARTIES

6. Plaintiff is an individual living in Baltimore, Maryland and is a songwriter, recording artist, and performing artist.

7. Upon information and belief, Defendant Gerald Henry aka Gerreaux Katana pka "Gerreaux" ("Gerreaux") is a music producer and composer. Upon information and belief, Gerreaux currently resides in Slidell, Louisiana.

8. Upon information and belief, Defendant Marcellus Rayvon Register is a recording artist, composer and performer who operates under the stage name "Babyface Ray." Upon information and belief, Mr. Register currently resides in Detroit, Michigan.

9. Upon information and belief, Defendant Dion Marquise Hayes is a recording artist, composer and performer who operates under the stage name "42 Dugg." Upon information and belief, Mr. Hayes currently resides in Detroit, Michigan.

10. Upon information and belief, Defendant Tamia Monique Carter is a recording artist, composer and performer who operates under the stage name "Flo Milli." Upon information and belief, Ms. Carter currently resides in Mobile, Alabama.

11. Upon information and belief, Defendant Sony Music Entertainment ("Sony") is a Delaware corporation with its principal place of business located in New York City, New York and has offices in Burbank, CA.

12. Upon information and belief, Defendant Empire Distribution, Inc. ("Empire") is a California corporation with its principal place of business located in San Francisco, California.

13. Plaintiff does not presently know the true names and capacities of the defendants named as Does 1 through 10 and therefore sues such defendants by these fictitious names. Plaintiff believes that the Doe Defendants are persons or entities who are involved in the acts set forth below, either as independent contractors, agents, or employees of the known defendants, or through entering into a conspiracy and agreement with the known Defendants to perform these acts, for financial gain and profit, in violation of Plaintiff's rights. Plaintiff will request leave of Court to amend this Complaint to set forth their true names, identities, and capacities when Plaintiff ascertains them. The Doe defendants and the known Defendants are referred to hereinafter collectively as "Defendants."

## III. JURISDICTION AND VENUE

14. The present action arises under the Copyright Act, Title 17, Section 101, et seq., of the United States Code.

15. Jurisdiction is conferred on this Court by 28 U.S.C. Section 1338(a).

16. Venue lies in the Central District of California under 28 U.S.C. § 1391(a) and (b) and 28 U.S.C. Section 1400(a).

## IV. FACTS COMMON TO ALL CLAIMS FOR RELIEF

### A. Gerreaux Composes the Beat and Lists It for Exclusive Sale on TrakTrain

17. In or about 2019, Gerreaux composed the musical work titled "Youu" and fixed it in a sound recording. The Beat has never been commercially released as a standalone track. In or about 2019, Gerreaux posted a preview of the Beat on his own YouTube channel, where it remains accessible at https://www.youtube.com/watch?v=vW9soo4NXPI.

18. TrakTrain (Traktrain.com) is an online marketplace, operated by TrakTrain USA Inc., that allows music producers to sell beats to recording artists. Upon information and belief, TrakTrain is owned and operated by Nick George. Upon information and belief, in order to sell beats on TrakTrain, a producer must create a password-protected account, upload his beats, designate the type of license offered for each beat (including an exclusive license), and set the price. When a purchase

occurs, the TrakTrain platform automatically generates a written license agreement that identifies the producer as the "Licensor" and the purchaser as the "Licensee," delivers a written confirmation of the transaction to the purchaser, and sends the producer a written notification of the sale. TrakTrain's publicly posted Terms of Service govern general use of the platform; they do not set forth the terms of beat sales, which are instead memorialized in the platform-generated license agreement between the producer and the purchaser.

19. Upon information and belief, in or about 2019, Gerreaux created a TrakTrain account, uploaded the Beat to TrakTrain, listed the Beat for sale on an exclusive basis, and set the purchase price. By doing so, Gerreaux agreed to TrakTrain's process for documenting sales made through the platform and authorized TrakTrain to generate and issue, on his behalf and upon purchase, the written license agreement memorializing each sale.

B. Deal Negotiates the Exclusive Purchase Directly with Gerreaux

20. On September 22, 2019, Deal wrote to Gerreaux at gerreaux575@gmail.com — the same email address that appears on the face of the written license agreement identifying Gerreaux as Licensor — stating that he wanted to buy the exclusive license to the Beat and asking Gerreaux to clarify the price, because the description

of Gerreaux's YouTube video for the Beat listed a price of $200 while Gerreaux's website listed a price of $300.

21. That same day, Gerreaux personally responded from that email account, under his professional name, writing: "I appreciate it man And thanks for your support! That's probably a mistake that it says $300, I'll change it to $200 right now for you man. Sorry about that!" Gerreaux thereby personally set the $200 price for Deal's purchase of the exclusive license to the Beat.

22. Deal responded the same day: "Awesome I'll be purchasing shortly!"

C. The Purchase and the Written License Agreement

23. On the evening of September 22, 2019 — within hours of Gerreaux's email confirming the $200 price — Deal purchased the exclusive license to the Beat through the TrakTrain website, paying Gerreaux $200 through the Stripe payment system (charge identifier ch_1FLfoDI9Mu9dW33oXeku5xv2), in a transaction designated TrakTrain Order No. 108936.

24. Minutes after the purchase, at 8:53 p.m. on September 22, 2019, TrakTrain sent Deal a written confirmation of the transaction by email. The email, with the subject line "Order info," stated "Thank you for your purchase!," identified the track as "Gerreaux - Youu," provided a link to download the Beat, and confirmed:

"You have purchased the Exclusive Rights." The email further directed Deal, in the event of any problems downloading the Beat, to "contact the producer at gerreaux575@gmail.com" — the same email address from which Gerreaux had negotiated the sale with Deal that day, and the same email address that appears on the face of the License Agreement identifying Gerreaux as the Licensor.

25. Upon information and belief, TrakTrain's practice in 2019 was, immediately upon a sale, to send the seller a written notification by email from info@traktrain.com with the subject line "You've got money from Traktrain | Stripe," stating "You just sold:" and identifying the track sold, the "Leasing type," the amount paid, and the buyer's email address. Upon information and belief, on or about September 22, 2019, TrakTrain sent Gerreaux such an email, notifying him in writing that he had sold the Beat, with leasing type "Exclusive Rights," for $200, to Deal, who was identified by his email address.

26. Upon Deal's purchase, the TrakTrain platform generated a written license agreement titled "Gerreaux - Youu: Exclusive License Agreement for TRAKTRAIN Order#108936" (the "License Agreement"), a true and correct copy of which is attached hereto as Exhibit 1. On its face, the License Agreement: (a) identifies "Gerreaux ('Songwriter')" as the "Licensor," with contact email

gerreaux575@gmail.com; (b) identifies Deal as the "Licensee," by his email address; (c) grants the Licensee an exclusive license in five separate operative provisions — master use, mechanical rights, performance rights, synchronization rights, and broadcast rights — to record vocals in synchronization with the Beat, to create a master recording, and to reproduce, distribute, perform, and otherwise exploit that master recording; (d) states a ten-year term from the September 23, 2019 effective date; (e) recites the $200 consideration, "receipt of which is confirmed"; and (f) identifies the Beat by its unique track identifier (uuid f5af1317-79ce-44cc-90fe-68bd92ef3b30).

27. The License Agreement bears the signature of Nick George. Upon information and belief, Mr. George is the owner and operator of TrakTrain and affixed his signature in his capacity as the operator of the marketplace through which Gerreaux offered, priced, and sold the exclusive license to the Beat.

28. Gerreaux executed and adopted the License Agreement electronically, with the intent to grant Deal the exclusive license it memorializes. Specifically, Gerreaux: (a) composed the Beat and uploaded it to TrakTrain; (b) listed the Beat for sale on an exclusive basis; (c) personally set — and, in his September 22, 2019 email to Deal, personally adjusted — the $200 purchase price for Deal's exclusive

purchase; (d) connected his Stripe account to the platform to receive payment; and (e) accepted and has at all times retained Deal's $200 payment. Under the Electronic Signatures in Global and National Commerce Act, 15 U.S.C. § 7006(5), and the California Uniform Electronic Transactions Act, Cal. Civ. Code §§ 1633.2(h), 1633.7, and 1633.9(a), Gerreaux's conduct constituted the execution and adoption of an electronic record and signature attributable to him.

D. Gerreaux Confirms the Transfer in Signed Writings

29. On September 28, 2019 — five days after the purchase — Deal wrote to Gerreaux at the same email address: "I bought it btw appreciate I think you may have forgot to mark it as sold though."

30. That same day, Gerreaux personally responded from his email account, under his professional name: "Ahh yes, sorry about that. I didn't see the notification because the payment was through Stripe, but yes! I just changed the status to sold!"

31. As his September 28, 2019 email states, Gerreaux then personally changed the status of the Beat's listing on the TrakTrain platform to "sold" — an electronic act, performed by Gerreaux himself, confirming that the exclusive license to the Beat had been sold to Deal.

32. The "notification" Gerreaux referenced in his September 28, 2019 email was TrakTrain's written notification to him of the sale of the exclusive rights in the Beat to Deal, described in paragraph 25 above. Gerreaux thus confirmed the sale in writing with knowledge of the transaction that TrakTrain had documented in writing to both parties.

33. Gerreaux's September 22 and September 28, 2019 emails, individually and together, constitute a note or memorandum of the transfer of exclusive rights in the Beat, in writing and signed by Gerreaux, within the meaning of 17 U.S.C. § 204(a). The emails identify the specific work (the Beat), the specific transaction (Deal's purchase), the exclusive nature of the sale (the Beat was to be marked "sold" and withdrawn from the market), and were sent within days of the transfer.

34. In addition, and in the alternative, by his conduct described above — confirming the sale in writing with knowledge of the transaction documented in TrakTrain's written notifications, retaining the $200 payment, and personally marking the Beat "sold" on the platform — Gerreaux ratified and adopted the License Agreement issued through TrakTrain and the transfer of exclusive rights it memorializes.

35. Gerreaux has never disputed the existence or validity of the exclusive license he sold to Deal. To the contrary, when Deal later confronted Gerreaux about the use of the Beat in "Ron Artest" and "Never Lose Me," Gerreaux responded by email on June 30, 2026, asking Deal to "please resend the purchase details, receipt, and contract from the website of purchase to confirm," expressing his hope "to come to a resolution on this matter." At no time — in that email or otherwise — has Gerreaux denied selling Deal the exclusive license to the Beat.

E. Plaintiff's Copyright Registrations

36. The copyright for the sound recording of Youu was registered with the U.S. Copyright Office in 2025, receiving registration number SR 1-035-649, with an effective date of registration of April 11, 2025. A true and correct copy of the registration certificate is attached hereto as Exhibit 2.

37. The copyright for the musical composition of Youu was registered with the U.S. Copyright Office in 2025, receiving registration number PA 2-556-422, with an effective date of registration of August 22, 2025. A true and correct copy of the registration certificate is attached hereto as Exhibit 3.

F. Defendants' Infringement

38. Upon information and belief, in 2023, despite having sold Deal the exclusive license to the Beat, Gerreaux licensed the Beat to Defendants Register and Hayes for use in their track "Ron Artest."

39. "Ron Artest" incorporates the actual sounds fixed in the Youu sound recording as its complete instrumental bed. From the beginning of the track through its end, the recording of the Beat — comprising its melodic keyboard/synthesizer loop, bass line, and distinctive drum pattern — plays continuously and repeats as a loop, and Register and Hayes perform rap vocals over it. There is no instrumental material in "Ron Artest" other than the Beat.

40. "Ron Artest" was very successful, earning over 96 million streams on Spotify and over 16 million views on YouTube to date.

41. Subsequently, upon information and belief, Gerreaux, Register and Hayes licensed the Beat to Defendant Carter, who used it to create a new song titled "Never Lose Me." From the beginning of "Never Lose Me" through its end, the Beat plays continuously as the track's instrumental bed, and Carter performs vocals over it. Again, just as with "Ron Artest," the entire underlying music bed of "Never Lose Me" is the Beat. It is not an isolated portion of the song or just a quick sample; it is the entire musical foundation for the song.

42. Carter created at least 6 versions of "Never Lose Me" titled:

a. Never Lose Me

b. Never Lose Me – Slowed

c. Never Lose Me – Sped Up

d. Never Lose Me (feat. Lil Yachty)

e. Never Lose Me (feat. Bryson Tiller)

f. Never Lose Me (feat. SZA & Cardi B)

43. These six versions of "Never Lose Me," all of which incorporate the Beat, are even more successful than "Ron Artest," to date collectively earning approximately 650 million streams on Spotify and over 50 million views on YouTube.

44. Defendants Carter, Gerreaux, Register and Hayes are all identified as co-songwriters on "Never Lose Me," and Gerreaux is identified as its producer. Gerreaux's songwriter and producer credits on "Never Lose Me" reflect the incorporation into that song of the musical composition he wrote — the Beat. A fifth person, Hitoshi Kirigaya, is also credited as a songwriter on "Never Lose Me"; upon information and belief, that credit reflects a separate sample of a song

written by Mr. Kirigaya, and Mr. Kirigaya had no part in including the Beat in "Never Lose Me."

45. At no point did Plaintiff give Defendants or anyone else permission to incorporate the Beat into "Ron Artest" or any version of "Never Lose Me."

46. Upon information and belief, "Ron Artest" and "Never Lose Me" are generally available to the public for listening on all of the major music platforms, including Spotify, iTunes Music, and YouTube Music. The Court and Defendants may compare the three works directly: the Beat is available at https://www.youtube.com/watch?v=vW9soo4NXPI; "Ron Artest" is available at https://youtu.be/BoB8C6TC6uU; and "Never Lose Me" is available at https://youtu.be/z67xXk8aNIk.

47. Upon information and belief, Defendants Gerreaux, Register and Hayes entered into a distribution agreement with Empire Distribution to distribute "Ron Artest" and it is Empire Distribution which has distributed "Ron Artest" and placed it on the various music platforms.

48. Upon information and belief, Defendants Gerreaux, Register, Hayes, and Carter entered into a distribution agreement with Sony to distribute the various

versions of “Never Lose Me” and it is Sony which has distributed the various versions of “Never Lose Me” and placed them on the various music platforms.

49. Defendants are believed to have collectively received well over $1 million dollars to date from their exploitation of “Ron Artest” and “Never Lose Me.”

FIRST CLAIM FOR RELIEF

(For Infringement of the Sound Recording Copyright in the Beat, in the song “Ron Artest,” against Defendants Gerreaux, Register, Hayes, and Empire Distribution)

50. Plaintiff re-alleges and incorporates by reference, as though set forth in full, paragraphs 1 through 49 above.

51. Pursuant to the License Agreement, Plaintiff is the owner of exclusive rights in the sound recording of the Beat during the term of the License Agreement, including the exclusive rights to use the Beat to create sound recordings and to reproduce and distribute recordings embodying the Beat. The sound recording is registered as Registration No. SR 1-035-649. Plaintiff is entitled to sue for infringement of those exclusive rights pursuant to 17 U.S.C. § 501(b).

52. Defendants Gerreaux, Register, Hayes and Empire Distribution have infringed Plaintiff’s exclusive rights in the sound recording of the Beat by duplicating the actual sounds fixed in the Youu sound recording, within the

meaning of 17 U.S.C. § 114(b), and incorporating those sounds into the song "Ron Artest" as its complete instrumental bed, without authorization, and by publishing, manufacturing, and distributing copies of "Ron Artest." Defendants never paid Plaintiff, nor secured authorization from Plaintiff for the use of the Beat in "Ron Artest," despite the fact that Plaintiff holds the exclusive license to use the Beat in recorded music.

53. As a direct and proximate result of Defendants' infringement, Plaintiff is entitled to his actual damages in addition to Defendants' profits that are attributable to the copyrighted material, in an amount believed to be at least $1 million.

54. Defendants threaten to continue to act as alleged above, and unless restrained and enjoined, will continue to do so, all to Plaintiff's irreparable injury. The amount of compensation which would afford adequate relief to Plaintiff for such injury will be difficult to ascertain. The wrongful acts of Defendants are of a continuing nature and will require a multiplicity of judicial proceedings. Accordingly, Plaintiff's remedy at law is inadequate, and Plaintiff is entitled to preliminary and permanent injunctive relief to enjoin the wrongful conduct of Defendants alleged above.

## SECOND CLAIM FOR RELIEF

(For Infringement of the Musical Composition Copyright in the Beat, in the song "Ron Artest," against Defendants Gerreaux, Register, Hayes, and Empire Distribution)

55. Plaintiff re-alleges and incorporates by reference, as though set forth in full, paragraphs 1 through 49 above.

56. Pursuant to the License Agreement, Plaintiff is the owner of exclusive rights in the musical composition of the Beat during the term of the License Agreement, including the exclusive mechanical, performance, synchronization, and broadcast rights to use the composition in recorded music. The musical composition is registered as Registration No. PA 2-556-422. Plaintiff is entitled to sue for infringement of those exclusive rights pursuant to 17 U.S.C. § 501(b).

57. Defendants Gerreaux, Register, Hayes and Empire Distribution have infringed Plaintiff's exclusive rights in the musical composition of the Beat by copying the composition in its entirety — its melody, harmony, rhythm, and arrangement — and embodying it in "Ron Artest" as that song's entire musical bed, without authorization, and by reproducing, distributing, and publicly

performing “Ron Artest.” Defendants never paid Plaintiff, nor secured authorization from Plaintiff for the use of the composition in “Ron Artest.”

58. As a direct and proximate result of Defendants’ infringement, Plaintiff is entitled to his actual damages in addition to Defendants’ profits that are attributable to the copyrighted material, in an amount believed to be at least $1 million.

59. Defendants threaten to continue to act as alleged above, and unless restrained and enjoined, will continue to do so, all to Plaintiff’s irreparable injury. Plaintiff’s remedy at law is inadequate, and Plaintiff is entitled to preliminary and permanent injunctive relief to enjoin the wrongful conduct of Defendants alleged above.

## THIRD CLAIM FOR RELIEF

(For Infringement of the Sound Recording Copyright in the Beat, in the song “Never Lose Me,” against Defendants Gerreaux, Register, Hayes, Carter, Sony Music Entertainment, and Empire Distribution)

60. Plaintiff re-alleges and incorporates by reference, as though set forth in full, paragraphs 1 through 49 above.

61. Pursuant to the License Agreement, Plaintiff is the owner of exclusive rights in the sound recording of the Beat during the term of the License Agreement, including the exclusive rights to use the Beat to create sound recordings and to reproduce and distribute recordings embodying the Beat. The sound recording is registered as Registration No. SR 1-035-649. Plaintiff is entitled to sue for infringement of those exclusive rights pursuant to 17 U.S.C. § 501(b).

62. Defendants Gerreaux, Register, Hayes, Carter, Sony Music Entertainment and Empire Distribution have infringed Plaintiff's exclusive rights in the sound recording of the Beat by duplicating the actual sounds fixed in the Youu sound recording, within the meaning of 17 U.S.C. § 114(b), and incorporating those sounds — by way of the sample of "Ron Artest" — into each of the six versions of "Never Lose Me" as their complete instrumental bed, without authorization, and by publishing, manufacturing, and distributing copies of the various versions of "Never Lose Me." Defendants never paid Plaintiff, nor secured authorization from Plaintiff for the use of the Beat in any version of "Never Lose Me."

63. As a direct and proximate result of Defendants' infringement, Plaintiff is entitled to his actual damages in addition to Defendants' profits that are

attributable to the copyrighted material, in an amount believed to be at least $1 million.

64. Defendants threaten to continue to act as alleged above, and unless restrained and enjoined, will continue to do so, all to Plaintiff's irreparable injury. Plaintiff's remedy at law is inadequate, and Plaintiff is entitled to preliminary and permanent injunctive relief to enjoin the wrongful conduct of Defendants alleged above.

## FOURTH CLAIM FOR RELIEF

(For Infringement of the Musical Composition Copyright in the Beat, in the song "Never Lose Me," against Defendants Gerreaux, Register, Hayes, Carter, Sony Music Entertainment, and Empire Distribution)

65. Plaintiff re-alleges and incorporates by reference, as though set forth in full, paragraphs 1 through 49 above.

66. Pursuant to the License Agreement, Plaintiff is the owner of exclusive rights in the musical composition of the Beat during the term of the License Agreement, including the exclusive mechanical, performance, synchronization, and broadcast rights to use the composition in recorded music. The musical composition is

registered as Registration No. PA 2-556-422. Plaintiff is entitled to sue for infringement of those exclusive rights pursuant to 17 U.S.C. § 501(b).

67. Defendants Gerreaux, Register, Hayes, Carter, Sony Music Entertainment and Empire Distribution have infringed Plaintiff's exclusive rights in the musical composition of the Beat by copying the composition in its entirety — its melody, harmony, rhythm, and arrangement — and embodying it in each of the six versions of "Never Lose Me" as those songs' entire musical bed, without authorization, and by reproducing, distributing, and publicly performing the various versions of "Never Lose Me." Defendants never paid Plaintiff, nor secured authorization from Plaintiff for the use of the composition in any version of "Never Lose Me."

68. As a direct and proximate result of Defendants' infringement, Plaintiff is entitled to his actual damages in addition to Defendants' profits that are attributable to the copyrighted material, in an amount believed to be at least $1 million.

69. Defendants threaten to continue to act as alleged above, and unless restrained and enjoined, will continue to do so, all to Plaintiff's irreparable injury. Plaintiff's remedy at law is inadequate, and Plaintiff is entitled to preliminary and

permanent injunctive relief to enjoin the wrongful conduct of Defendants alleged above.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. That Defendants be required to pay Plaintiff such damages as Plaintiff has sustained or will sustain by reason of Defendants' conduct, and to account for all gains, profits and advantages derived by Defendants from such conduct but in no event less than $1,000,000.

2. That all items which infringe Plaintiff's copyright be impounded, surrendered up and forfeited to Plaintiff for destruction or other disposition.

3. That Defendants and Defendants' agents, servants, and employees, and each of them, and all persons acting in concert and participation with them, be enjoined and restrained during the pendency of this action and permanently thereafter from infringing any and all of the copyrights in his music by, among other things, acquiring, copying, manufacturing, distributing, and selling Plaintiff's music or any tracks that incorporate Plaintiff's music; and

4. That Defendants be required to pay to Plaintiff his costs incurred in connection with the prosecution of this action; and

5. For such other and further relief as the Court deems appropriate.

DATED: July 21, 2026 LAW OFFICES OF LARRY ZERNER

By: /s/Larry Zerner
Larry Zerner
Attorney for Plaintiff Shamar Deal

DEMAND FOR TRIAL BY JURY

Plaintiff Shamar Deal pursuant to Rule 38 of the Federal Rules of Civil Procedure hereby demands trial by jury of all issues so triable in the present action.

DATED: July 21, 2026 LAW OFFICES OF LARRY ZERNER

By: /s/Larry Zerner
Larry Zerner
Attorney for Plaintiff Shamar Deal