Larry Zerner (SBN 155473)
Law Offices of Larry Zerner
1801 Century Park East, Ste. 2400
Los Angeles, CA 90067
(310) 773-3623
Email: Larry@ZernerLaw.com

Attorneys for Plaintiff Shamar Deal

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAMAR DEAL,<br><br>Plaintiff,<br><br>vs.<br><br>GERALD HENRY aka GERREAUX KATANA pka "GERREAUX", an individual, MARCELLUS RAYVON REGISTER pka "BABYFACE RAY", an individual, DION MARQUISE HAYES pka "42 DUGG", an individual, TAMIA MONIQUE CARTER pka "FLO MILLI", SONY MUSIC ENTERTAINMENT, a Delaware corporation, EMPIRE DISTRIBUTION, INC., a business entity form unknown, and DOES 1-10, Inclusive,<br><br>Defendants | Lead Case No.: 2:25–cv–05872-AB-E<br>Case No.: 2:25–cv–11781-AB-E<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT SONY MUSIC ENTERTAINMENT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT<br><br>Date: September 25, 2026<br>Time: 10:00 a.m.<br>Courtroom of the Honorable André Birotte Jr.<br>United States District Judge |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................5
II. STATEMENT OF FACTS..............................................................................7
III. LEGAL STANDARD...................................................................................10
IV. ARGUMENT...............................................................................................11
A. Gerreaux's Own Emails Are a Signed "Note or Memorandum of the Transfer" Under Section 204(a)...........................................................11
1. Section 204(a) provides two independent paths, and no magic words are required. ...................................................................................11
2. The prior Order decided the other path — adoption of the License Agreement — not this one.......................................................................12
3. The emails document a completed exclusive sale, with the finality the Ninth Circuit requires. ............................................................................14
4. The emails are contemporaneous and a product of the parties' negotiations...............................................................................................15
5. Under the E-SIGN Act, Gerreaux's emails are signed.............................15
6. A memorandum need not restate the license's terms. ..............................18
B. In the Alternative, Gerreaux's Signed Emails Confirmed and Adopted the Transfer Memorialized in the License Agreement. ...........................................19
C. Section 204(a)'s Purposes Confirm the Sufficiency of Gerreaux's Writings. ....................................................................................................21
D. The SAC Identifies the Copied Elements with the Precision the Court Requested.....................................................................................................23
E. Sony's New "Sampling" Argument Rests on Facts Outside the Pleadings...25
F. In the Alternative, Leave to Amend Should Be Granted. ..............................26
V. CONCLUSION ............................................................................................27

# TABLE OF AUTHORITIES

## Cases


*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 10, 25

*Crispin v. Christian Audigier, Inc.*, 839 F. Supp. 2d 1086 (C.D. Cal. 2011) .......... 20

*DISH Network L.L.C. v. Fraifer*, No. 24-10223 (11th Cir. Apr. 9, 2026) .......... 22

*DRK Photo v. McGraw-Hill Global Educ. Holdings, LLC*, 870 F.3d 978 (9th Cir. 2017) .......... 21

*Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27 (2d Cir. 1982) .......... 19

*Effects Assocs., Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990) .......... 6, 11, 18, 27

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) .......... 26

*Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96 (11th Cir. 1995) .......... 21, 22

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146 (9th Cir. 2010) ... 6, 11, 19, 21

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) .......... 10, 26

*Konigsberg Int'l Inc. v. Rice*, 16 F.3d 355 (9th Cir. 1994) .......... 12, 15, 19, 20, 26

*Li v. Kerry*, 710 F.3d 995 (9th Cir. 2013) .......... 10, 17, 22

*Lyrick Studios, Inc. v. Big Idea Prods., Inc.*, 420 F.3d 388 (5th Cir. 2005) .......... 20

*Magnuson v. Video Yesteryear*, 85 F.3d 1424 (9th Cir. 1996) .......... 19

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) .......... 10

*Metropolitan Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591 (4th Cir. 2013) .......... 16

*Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032 (9th Cir. 2015) .......... 26

*Pamfiloff v. Giant Records, Inc.*, 794 F. Supp. 933 (N.D. Cal. 1992) .......... 20

*Pinkham v. Sara Lee Corp.*, 983 F.2d 824 (8th Cir. 1992) .......... 20

*Radio Television Espanola S.A. v. New World Entm't, Ltd.*, 183 F.3d 922 (9th Cir. 1999) .......... 6, 12, 14, 19

*Scott v. Kuhlmann*, 746 F.2d 1377 (9th Cir. 1984) .......... 10, 26

*Sisyphus Touring, Inc. v. TMZ Prods., Inc.*, 208 F. Supp. 3d 1105 (C.D. Cal. 2016) .......... 6, 16, 17

*Stiletto Television, Inc. v. Hastings, Clayton & Tucker, Inc.*, 392 F. Supp. 3d 1133 (C.D. Cal. 2019) .......... 12

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) .......... 10, 26

*Vergara Hermosilla v. Coca-Cola Co.*, No. 10-21418-CIV, 2011 WL 744098 (S.D. Fla. Feb. 23, 2011) .......... 16

*Yellowcake, Inc. v. Morena Music, Inc.*, 522 F. Supp. 3d 747 (E.D. Cal. 2021) .......... 21

**Statutes**

15 U.S.C. § 7001(a) .......... 16

15 U.S.C. § 7006(5) .......... 6, 16

17 U.S.C. § 103(b) .......... 26

17 U.S.C. § 114(b) .......... 24

17 U.S.C. § 204(a) .......... passim

Cal. Civ. Code § 1633.2(h) .......... 16

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 7, 10, 11, 22

Fed. R. Civ. P. 15(a)(2) .......... 26

MEMORANDUM OF POINTS AND AUTHORITIES

I. INTRODUCTION

When this Court granted leave to amend, it told Plaintiff exactly what an amended complaint must contain: "non-conclusory allegations establishing either a valid signature attributable to Gerreaux or facts plausibly demonstrating an agency relationship." (Order Granting Motion to Dismiss, Dkt. No. 78 ("Order") at 9.) The Second Amended Complaint delivers a valid signature attributable to Gerreaux — twice. Not anyone else's signature, and not conduct alone, but two writings Gerreaux personally composed and sent to Plaintiff. On September 22, 2019, Gerreaux personally set the price of the exclusive license: "That's probably a mistake that it says $300, I'll change it to $200 right now for you man. Sorry about that!" (SAC ¶ 21.) On September 28, 2019, after Plaintiff paid, Gerreaux confirmed the completed sale: "Ahh yes, sorry about that. I didn't see the notification because the payment was through Stripe, but yes! I just changed the status to sold!" (SAC ¶ 30.)

Section 204(a) validates a transfer of exclusive rights if "an instrument of conveyance, *or a note or memorandum of the transfer*, is in writing and signed by the owner of the rights conveyed." 17 U.S.C. § 204(a) (emphasis added). The statute supplies two independent paths. Sony's prior Motion — and this Court's prior Order — addressed only the first: whether Gerreaux signed or adopted the

TrakTrain-generated License Agreement. The Court framed its analysis as "the narrower question of whether Gerreaux's alleged conduct — absent any signature or allegation of agency — is sufficient to demonstrate that he 'executed or adopted' the electronic record with the intent to sign." (Order at 6.) The Court has never passed on the second path: whether Gerreaux's own emails are themselves a signed "note or memorandum of the transfer." They are. The Ninth Circuit requires remarkably little: "a one-line pro forma statement will do," *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990); "[n]o magic words must be included," *Radio Television Espanola S.A. v. New World Entm't, Ltd.*, 183 F.3d 922, 927 (9th Cir. 1999); "[a] simple written note or memorandum of transfer" suffices, *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1156 (9th Cir. 2010). And under the E-SIGN Act, an email the owner composes and sends is "signed" within the meaning of federal law. 15 U.S.C. § 7006(5); *Sisyphus Touring, Inc. v. TMZ Prods., Inc.*, 208 F. Supp. 3d 1105, 1112–14 (C.D. Cal. 2016).

Indeed, this Court has already read these messages most of the way to that conclusion. It observed that they "may support Plaintiff's allegation that Gerreaux intended to sell the Beat exclusively to Plaintiff," and that "[a]t most, the exchange reflects Gerreaux's acknowledgment that Plaintiff had purchased the Beat." (Order at 7–8.) On the note-or-memorandum path, that is not a concession — it is the whole test. A signed writing in which the owner of the copyright acknowledges the

completed purchase *is* a "note or memorandum of the transfer" in the most literal sense. What the messages did not show — that Gerreaux executed or adopted "the TrakTrain licensing Agreement itself" (Order at 8) — is a defect only on the statutory path the Second Amended Complaint no longer travels.

Sony's remaining arguments fare no better. The SAC identifies the copied elements with the precision the Order requested — down to the keyboard/synthesizer loop, bass line, and drum pattern that play continuously as the entire instrumental bed of both accused songs. And Sony's new "sampling" theory rests on defense counsel's own listening impressions of a YouTube recording that appears nowhere in the SAC — extrinsic material a court may not use to contradict a pleading on a Rule 12(b)(6) motion. The Motion should be denied.

## II. STATEMENT OF FACTS

Gerreaux composed the beat "Youu" in 2019 and listed it for sale on an exclusive basis on TrakTrain.com, an online marketplace where producers sell beats to recording artists. (SAC ¶¶ 17–19.) To sell on TrakTrain, a producer creates a password-protected account, uploads his beats, designates the type of license offered — including an exclusive license — and sets the price. (SAC ¶ 18.) When a purchase occurs, the platform automatically generates a written license agreement identifying the producer as "Licensor" and the purchaser as "Licensee,"

sends the purchaser a written confirmation, and sends the producer a written notification of the sale. (*Id.*) By listing the Beat for exclusive sale, Gerreaux agreed to TrakTrain's process for documenting sales made through the platform. (SAC ¶ 19.)

Plaintiff did not buy the Beat from a stranger through an anonymous portal; he negotiated with Gerreaux directly, in writing. On September 22, 2019, Plaintiff emailed Gerreaux at gerreaux575@gmail.com — the same address that appears on the face of the License Agreement identifying Gerreaux as Licensor — stating that he wanted to buy the exclusive license to the Beat and asking Gerreaux to clarify the price. (SAC ¶ 20.) Gerreaux personally responded from that account, under his professional name: "I appreciate it man And thanks for your support! That's probably a mistake that it says $300, I'll change it to $200 right now for you man. Sorry about that!" (SAC ¶ 21.) Plaintiff replied, "Awesome I'll be purchasing shortly!" (SAC ¶ 22.)

That evening, Plaintiff purchased the exclusive license through TrakTrain, paying Gerreaux $200 through Stripe (charge identifier ch_1FLfoDI9Mu9dW33oXeku5xv2, TrakTrain Order No. 108936). (SAC ¶ 23.) Minutes later, TrakTrain emailed Plaintiff a written confirmation — "You have purchased the Exclusive Rights" — identifying the track as "Gerreaux - Youu" and directing Plaintiff, in the event of any problem, to "contact the producer at

gerreaux575@gmail.com." (SAC ¶ 24.) TrakTrain likewise sent Gerreaux a written notification, "You just sold:", identifying the track, the leasing type — "Exclusive Rights" — the $200 price, and the buyer. (SAC ¶ 25.) The platform generated a written License Agreement identifying "Gerreaux ('Songwriter')" as Licensor by name and email address, granting five exclusive operative rights for a ten-year term from September 23, 2019, and reciting the $200 consideration, "receipt of which is confirmed." (SAC ¶ 26 & Exh. 1.) Nick George, TrakTrain's owner, affixed his signature in his capacity as operator of the marketplace. (SAC ¶ 27.)

Five days later, on September 28, 2019, Plaintiff wrote Gerreaux again: "I bought it btw appreciate I think you may have forgot to mark it as sold though." (SAC ¶ 29.) Gerreaux personally responded the same day: "Ahh yes, sorry about that. I didn't see the notification because the payment was through Stripe, but yes! I just changed the status to sold!" (SAC ¶ 30.) As his email states, Gerreaux then personally changed the Beat's listing to "sold," withdrawing it from the market. (SAC ¶ 31.) The "notification" his email references is TrakTrain's written notice to him of the sale of the exclusive rights to Plaintiff. (SAC ¶ 32.)

Despite the exclusive sale, Gerreaux licensed the Beat in 2023 to Defendants Register and Hayes, whose song "Ron Artest" uses the recording of the Beat as its complete instrumental bed. (SAC ¶¶ 38–39.) Defendant Carter then built "Never Lose Me" — released in at least six versions distributed by Sony — on the Beat as

well. (SAC ¶¶ 41–43, 48.) Gerreaux has never disputed the existence or validity of the exclusive license: when Plaintiff confronted him about "Ron Artest" and "Never Lose Me," Gerreaux responded by email on June 30, 2026, asking Plaintiff to "please resend the purchase details, receipt, and contract from the website of purchase to confirm," and expressing his hope "to come to a resolution on this matter." At no time — in that email or otherwise — has Gerreaux denied selling Plaintiff the exclusive license. (SAC ¶ 35.)

## III. LEGAL STANDARD

On a Rule 12(b)(6) motion, the Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to Plaintiff. *Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013). A complaint need only give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Generally, a court cannot consider evidence outside of the pleadings, *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003), and it may not use extrinsic or judicially noticed materials to resolve disputed facts against the complaint's allegations, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–1003 (9th Cir. 2018). "[A]ffirmative defenses may not be raised by motion to dismiss." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam). And as Sony concedes (Mot. at 14 n.3, citing *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011)), its § 204(a)

argument goes to statutory standing under Rule 12(b)(6), not Article III jurisdiction.

## IV. ARGUMENT

### A. Gerreaux's Own Emails Are a Signed "Note or Memorandum of the Transfer" Under Section 204(a).

*1. Section 204(a) provides two independent paths, and no magic words are required.*

Section 204(a) validates a transfer where "an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a). Sony's Motion treats the License Agreement as the only writing that could matter and asks whether Gerreaux signed it. But the statute is disjunctive. The owner's signature on a formal instrument is one path; a signed "note or memorandum of the transfer" is another, equally valid one. The Ninth Circuit has said so in terms: "A simple written note or memorandum of transfer signed by [the owner] . . . would have been sufficient, 17 U.S.C. § 204(a)." *Jules Jordan*, 617 F.3d at 1156.

The content bar is deliberately low. "The rule is really quite simple: If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so." *Effects*, 908 F.2d at 557. A "one-line pro forma statement will do." *Id.* "No magic words must be included in a

document to satisfy § 204(a). Rather, the parties' intent as evidenced by the writing must demonstrate a transfer of the copyright." *Radio Television Espanola*, 183 F.3d at 927; *accord Stiletto Television, Inc. v. Hastings, Clayton & Tucker, Inc.*, 392 F. Supp. 3d 1133 (C.D. Cal. 2019). The writing exists so that there will be something to "serve as a guidepost for the parties to resolve their disputes." *Konigsberg Int'l Inc. v. Rice*, 16 F.3d 355, 357 (9th Cir. 1994).

*2. The prior Order decided the other path — adoption of the License Agreement — not this one.*

Sony's lead argument is that the Court has already found these emails insufficient. (Mot. at 1–2, 11.) That misreads the Order. Plaintiff's prior briefing presented one theory: that Gerreaux "executed or adopted" the TrakTrain-generated License Agreement, whether through his marketplace conduct or through the messages. The Court's analysis was expressly confined to that question — "the narrower question of whether Gerreaux's alleged conduct — absent any signature or allegation of agency — is sufficient to demonstrate that he 'executed or adopted' the electronic record with the intent to sign" (Order at 6) — and its holding was correspondingly precise: "The text messages do not establish that Gerreaux executed or adopted the TrakTrain licensing Agreement itself." (Order at 8.) The Court then described what the messages *do* show: "At most, the exchange reflects Gerreaux's acknowledgment that Plaintiff had purchased the Beat and that

its status on TrakTrain should be updated. That acknowledgment, however, is distinct from manifesting assent to the specific written instrument on which Plaintiff's standing depends." (*Id.*)

The Second Amended Complaint takes the Court at its word. Plaintiff's standing no longer depends on anyone's assent to the "specific written instrument." The SAC alleges, for the first time, that Gerreaux's September 22 and September 28, 2019 emails, "individually and together, constitute a note or memorandum of the transfer of exclusive rights in the Beat, in writing and signed by Gerreaux, within the meaning of 17 U.S.C. § 204(a)." (SAC ¶ 33.) The Court has never ruled on that theory. And on this path, the Court's own description of the exchange — the owner's written "acknowledgment that Plaintiff had purchased the Beat" — is not the defect. It is the statute, satisfied.

This also disposes of two detours in Sony's Motion. Sony devotes pages to showing that TrakTrain's platform "does not require that grantors electronically sign licenses" (Mot. at 9–10), and pages more to the signature of TrakTrain's owner, Nick George, and to Plaintiff's counsel's candid disclosure at the June 26, 2026 hearing about how that signature came to be added (Mot. at 6–7). Both discussions attack allegations the SAC does not make. The SAC does not allege that the platform obtained Gerreaux's electronic signature on the License Agreement, and it does not allege that Mr. George signed as Gerreaux's agent — it

alleges he signed "in his capacity as the operator of the marketplace." (SAC ¶ 27.) Under the note-or-memorandum path, the License Agreement supplies the transaction's detailed terms, but the signed writings on which Plaintiff's standing rests are Gerreaux's own emails. Whether Mr. George signed the Agreement in 2019, in 2026, or never, does not change a word of them.

*3. The emails document a completed exclusive sale, with the finality the Ninth Circuit requires.*

Measure Gerreaux's emails against the standard. On September 22, responding to Plaintiff's written request to buy "the exclusive license" to the Beat (SAC ¶ 20), Gerreaux personally set the deal's one open term — price: "That's probably a mistake that it says $300, I'll change it to $200 right now for you man." (SAC ¶ 21.) Plaintiff answered, "Awesome I'll be purchasing shortly!" and paid that evening. (SAC ¶¶ 22–23.) On September 28, Gerreaux confirmed the sale was complete: "but yes! I just changed the status to sold!" (SAC ¶ 30.) Together, the writings identify the work (the Beat), the parties, the price ($200 — paid to Gerreaux and retained by him ever since), and the completed disposition: "sold," with the listing withdrawn from the market. (SAC ¶¶ 23, 28, 30–31, 33.)

The contrast with *Radio Television Espanola* — Sony's own lead authority — is instructive. The faxes there failed § 204(a) because they documented a deal the parties were still negotiating and never finalized. 183 F.3d at 927–28.

Gerreaux's September 28 email is the opposite of pending: the payment had been made, TrakTrain's written notices had issued, and the owner himself declared the item "sold" and took it off the market. Nothing remained to negotiate. A signed writing announcing a completed sale is a memorandum *of the transfer* in the most literal sense.

*4. The emails are contemporaneous and a product of the parties' negotiations.*

*Konigsberg* requires that a § 204(a) writing be executed "more or less contemporaneously" with the agreement and be a "product of the parties' negotiations." 16 F.3d at 357. Anne Rice's letter flunked both requirements: it was written three and a half years after the alleged oral agreement, mid-dispute, far too late to serve as any guidepost. *Id.* Gerreaux's emails are the paradigm *Konigsberg* contemplates. The September 22 email *is* the parties' negotiation — it set the price — and the September 28 confirmation came five days after the purchase, at the very start of a ten-year license and nearly seven years before any dispute arose. These writings were the parties' reference point from the start.

*5. Under the E-SIGN Act, Gerreaux's emails are signed.*

Federal law defines an electronic signature functionally: "an electronic sound, symbol, or process, attached to or logically associated with a contract or other record and executed or adopted by a person with the intent to sign the

record." 15 U.S.C. § 7006(5); *see also* Cal. Civ. Code § 1633.2(h) (materially identical definition). An electronic record or signature "may not be denied legal effect, validity, or enforceability solely" because it is in electronic form. 15 U.S.C. § 7001(a). Applying those provisions to § 204(a), the court in *Sisyphus Touring* held that a copyright owner's emails effected a valid transfer of copyright ownership. The owner there never clicked an "I agree" button; it was enough that he "did have to click the 'send' button and the email had 'Jake Miller'" — his professional pseudonym — "written at the bottom, purporting to be [his] signature." 208 F. Supp. 3d at 1113. *Sisyphus* adopted the Fourth Circuit's holding that "[a]n electronic agreement may effect a valid transfer of copyright interests under Section 204 of the Copyright Act," because "[t]o invalidate copyright transfer agreements solely because they were made electronically would thwart the clear congressional intent." *Id.* (quoting *Metropolitan Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 602 (4th Cir. 2013)); *see also Vergara Hermosilla v. Coca-Cola Co.*, No. 10-21418-CIV, 2011 WL 744098 (S.D. Fla. Feb. 23, 2011) (same).

Gerreaux's emails satisfy that definition. He composed each message and deliberately clicked "send" — the electronic "process" *Sisyphus* credited — and each message traveled under the identifying symbols Gerreaux adopted for his music business: his professional name and his unique address,

gerreaux575@gmail.com, the very name and address that appear on the face of the License Agreement identifying the Licensor, and the same address to which TrakTrain's purchase confirmation directed Plaintiff in the event of any problem. (SAC ¶¶ 21, 24, 26, 30.) The SAC alleges that Gerreaux sent both emails personally, intending to confirm first the price and then the completed sale. (SAC ¶¶ 21, 28, 30, 33.) Those allegations are accepted as true. *Li*, 710 F.3d at 999. Unlike the First Amended Complaint — which asked the Court to infer adoption of a document from marketplace conduct — the Second Amended Complaint rests on writings Gerreaux himself authored. That is "a valid signature attributable to Gerreaux." (Order at 9.)

Sony's authorities are not to the contrary. Each of its e-signature cases involved a signing ceremony — an "I agree" on a recorded call, a "Click to add Signature" button, a "sign" icon — because in each the signer was assenting to a document someone else drafted. (Mot. at 8–9.) Where, as here and in *Sisyphus*, the owner composes the writing himself, the email is the signature. Even the treatise passage Sony quotes — that an electronic signature "simply must demonstrate the same sort of solemnity that hoisting a pen and affixing one's John Hancock conveys in the physical world" (Mot. at 13) — describes exactly what Gerreaux did: he wrote out a message confirming his sale, under the professional name by

which he does business, and pressed send. That is the digital equivalent of signing a letter.

*6. A memorandum need not restate the license's terms.*

Sony argues the emails cannot satisfy § 204(a) because they do not recite the License Agreement's five operative grants, its ten-year term, its indemnity provision, or the allocation of the writer's share. (Mot. at 12–13.) That argument reads the words "note or memorandum of the transfer" out of the statute. A memorandum that restated every term would simply *be* the instrument of conveyance — the statute's other path. *Effects* forecloses the argument: a "one-line pro forma statement" necessarily omits terms, yet "will do." 908 F.2d at 557.

Nor do the emails float free of the deal's documentation. Gerreaux's September 28 email expressly references "the notification" — TrakTrain's written notice to him identifying the track, the "Exclusive Rights" leasing type, the $200 price, and the buyer — and responds directly to Plaintiff's message about the same purchase. (SAC ¶¶ 25, 29–32.) The transaction's detailed terms are memorialized in the License Agreement that the same purchase generated. (SAC ¶ 26 & Exh. 1.) Every writing in this record — Plaintiff's request, Gerreaux's price confirmation, TrakTrain's twin notices, the License Agreement, and Gerreaux's "sold" confirmation — documents a single completed purchase of one identified beat, at one confirmed price, within a single week. This is nothing like *Radio Television*

*Espanola*, where the writings concerned a deal never finalized. 183 F.3d at 927–28. And if Sony believes some term of the License Agreement is ambiguous or incomplete, that is an argument for another day and a different motion. It is not a reason the owner's signed confirmation of his completed sale fails a statute whose writing need only "serve as a guidepost for the parties to resolve their disputes." *Konigsberg*, 16 F.3d at 357.

B. In the Alternative, Gerreaux's Signed Emails Confirmed and Adopted the Transfer Memorialized in the License Agreement.

The SAC separately alleges that by confirming the sale in writing with knowledge of TrakTrain's written documentation, retaining the $200 payment, and personally marking the Beat "sold," Gerreaux ratified and adopted the License Agreement and the transfer it memorializes. (SAC ¶ 34.) The Ninth Circuit permits exactly this: "an earlier oral assignment can be confirmed later in a writing." *Jules Jordan*, 617 F.3d at 1156. In *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1428–29 (9th Cir. 1996), the court held that a memorandum executed after the fact satisfied the writing requirement where the transferor and transferee did not dispute that the transfer occurred. And *Konigsberg* itself, quoting *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 36 (2d Cir. 1982) ("memorandum of transfer made within year of oral agreement and during term of exclusive license validated agreement ab initio"), read the confirmation rule "as applying only to

writings executed during the life of the purported license — not, as here, many years later." 16 F.3d at 357 n.3. Gerreaux's confirming email came five days into a ten-year license — not, as in *Konigsberg*, years after the purported license expired and months into litigation.

Sony's cases rejecting "end runs" around § 204(a) (Mot. at 14–15) share a feature this case lacks: in every one of them, there was no writing signed by the owner evidencing the transfer at all. *Konigsberg* involved an oral deal and a letter written years too late. *Lyrick Studios, Inc. v. Big Idea Prods., Inc.*, 420 F.3d 388, 395–96 (5th Cir. 2005), involved an unwritten understanding and the parties' course of dealing; *Pamfiloff v. Giant Records, Inc.*, 794 F. Supp. 933, 936–37 (N.D. Cal. 1992), estoppel; *Pinkham v. Sara Lee Corp.*, 983 F.2d 824, 828–29 (8th Cir. 1992), apparent authority. And in *Crispin v. Christian Audigier, Inc.*, 839 F. Supp. 2d 1086, 1092 (C.D. Cal. 2011) — the case this Court's Order discussed — the only writings beyond the unsigned agreement were endorsed checks bearing no reference to the copyrighted work. (*See* Order at 6.) Plaintiff invokes no estoppel, no apparent authority, no course of dealing. His ratification theory rests on signed writings — Gerreaux's own emails, which identify the Beat, the sale, and its exclusive character by express reference to TrakTrain's notification — sent within days of the transfer. (SAC ¶¶ 30, 32–33.) That is not an end run around the writing requirement. That is the writing requirement, satisfied.

C. Section 204(a)'s Purposes Confirm the Sufficiency of Gerreaux's Writings.

To be clear about the burden: Plaintiff must plead his ownership of exclusive rights, and a third-party defendant may test whether he has done so. *DRK Photo v. McGraw-Hill Global Educ. Holdings, LLC*, 870 F.3d 978, 987 (9th Cir. 2017). This Court said the same: "The dispositive issue is not whether Defendants may invoke § 204(a), but whether Plaintiff has adequately alleged a valid written transfer in the first instance." (Order at 8.) The SAC now does exactly that — it alleges signed writings from the owner memorializing the transfer. *See* Parts IV.A–B, *supra*.

But § 204(a)'s purposes still matter, because they tell the Court how to read those writings — and how much skepticism Sony's demands for more deserve. The Ninth Circuit has explained: "Section 204(a) is designed to resolve disputes between owners and transferees and to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses or copyright ownership," and "when there is no dispute between the copyright owner and transferee, 'it would be unusual and unwarranted to permit a third-party infringer to invoke § 204(a) to avoid suit for copyright infringement.'" *Jules Jordan*, 617 F.3d at 1156–57 (quoting *Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96, 99 (11th Cir. 1995)); *see also Yellowcake, Inc. v. Morena Music, Inc.*, 522 F. Supp. 3d 747 (E.D. Cal. 2021). The Eleventh Circuit applied the same principle just months

ago, in a published decision rejecting precisely the maneuver Sony attempts here. In *DISH Network L.L.C. v. Fraifer*, 2026 WL-2267372 (11th Cir. Aug 6, 2026), accused infringers challenged the sufficiency of the written agreements in the plaintiff's chain of title. The Court of Appeals held that the challenges "fail for a simple reason: Section 204(a) does not permit the defendants to challenge the sufficiency of the written agreements transferring ownership of the copyrights," because the "chief purpose" of § 204(a) "is to resolve disputes between copyright owners and transferees and to protect copyright holders from persons mistakenly or fraudulently claiming . . . copyright ownership," and "there is no dispute about the status of the copyright ownership between" the original owner and the transferee. Slip op. at 5 (quoting *Imperial Residential Design*, 70 F.3d at 99).

There is no dispute between Gerreaux and Plaintiff about the 2019 transfer. The SAC alleges that Gerreaux "has never disputed the existence or validity of the exclusive license," and that when Plaintiff confronted him in June 2026, Gerreaux responded by asking Plaintiff to "please resend the purchase details, receipt, and contract from the website of purchase to confirm," expressing his hope "to come to a resolution on this matter." (SAC ¶ 35.) Sony reads that email as proof that Gerreaux "did not know what Plaintiff was talking about" (Mot. at 11) — an inference drawn against the pleader, which Rule 12(b)(6) forbids. *Li*, 710 F.3d at 999. Asking to re-review the paperwork is not a denial; on the allegations, it is the

owner turning to the very written guideposts § 204(a) exists to create. Nor does Gerreaux's 2023 re-licensing of the Beat manufacture an owner-transferee "dispute" — it is an act of *infringement* of the exclusive license Gerreaux had confirmed in writing four years earlier. If double-licensing alone created a "dispute" defeating the rule, the rule would evaporate in every case involving a faithless licensor — the situation in which exclusive licensees most need standing to sue.

Section 204(a) was enacted to protect copyright owners like Gerreaux from false claims of transfer — not to arm the distributor of the accused songs with hyper-technical objections to a sale that the owner personally priced, was paid for, confirmed in writing, and has never once disputed. Sony, a stranger to the 2019 transaction, asks the Court to scrutinize the parties' writings more exactingly than either party to the transfer ever has. The statute does not require that, and its purposes forbid it.

D. The SAC Identifies the Copied Elements with the Precision the Court Requested.

The Order directed that Plaintiff "should identify, with more precision, the specific elements of the Beat's sound recording and musical composition that are alleged to be reproduced in each challenged work and, where feasible, explain how

those elements are incorporated in 'Ron Artest' and 'Never Lose Me.'" (Order at 11.) The SAC does each piece of that, claim by claim.

For the sound recording claims, the SAC identifies the actual sounds taken: "the recording of the Beat — comprising its melodic keyboard/synthesizer loop, bass line, and distinctive drum pattern — plays continuously and repeats as a loop" from the beginning of "Ron Artest" through its end, with rap vocals performed over it, and "[t]here is no instrumental material in 'Ron Artest' other than the Beat." (SAC ¶ 39.) It alleges how those sounds are incorporated: as the song's complete instrumental bed, "duplicating the actual sounds fixed in the Youu sound recording, within the meaning of 17 U.S.C. § 114(b)." (SAC ¶¶ 39, 52.) The SAC makes the same allegations for "Never Lose Me": the Beat "plays continuously as the track's instrumental bed" and "is the entire musical foundation for the song," not "an isolated portion of the song or just a quick sample." (SAC ¶ 41.) For the musical composition claims, the SAC separately alleges copying of the composition "in its entirety — its melody, harmony, rhythm, and arrangement" — and its embodiment in each accused song as that song's entire musical bed. (SAC ¶¶ 57, 67.) And the SAC supplies links to all three works so the Court and Defendants can listen and compare. (SAC ¶ 46.)

That is the identification the Order asked for. This is a wholesale-incorporation case: where the allegation is that the entire work serves as each

accused song's complete instrumental bed, the questions "which elements" and "how incorporated" have complete answers — all of them, continuously, from start to finish. Rule 8 requires "fair notice," *Twombly*, 550 U.S. at 555, not a time-stamped musicological transcription. The Court has already observed that these allegations, "read in conjunction with the referenced recordings — appear to convey a theory of substantial incorporation of the Beat into the accused works," and took care to note that "[n]othing in this Order should be read to suggest that Plaintiff's claims ultimately fail on the merits of substantial similarity." (Order at 11.) The SAC supplies the added clarity the Court requested; Sony's demand for still more is a demand for expert analysis at the pleading stage, which the law does not require.

E. Sony's New "Sampling" Argument Rests on Facts Outside the Pleadings.

Sony argues for the first time that, because the Beat allegedly samples a Hitoshi Kirigaya recording, the copyright Gerreaux licensed to Plaintiff protects "at most" Gerreaux's original contributions, which Sony says are unidentified. (Mot. at 16–17.) The argument fails at the threshold, because the SAC does not allege that the Beat contains any sample. It alleges the opposite: that Gerreaux "composed the musical work titled 'Youu' and fixed it in a sound recording" (SAC ¶ 17), and that Kirigaya's songwriter credit on "Never Lose Me" "reflects a

separate sample of a song written by Mr. Kirigaya," as to which "Mr. Kirigaya had no part in including the Beat in 'Never Lose Me.'" (SAC ¶ 44.)

To manufacture its premise, Sony offers defense counsel's own listening impressions and a YouTube link to the Kirigaya recording that appears nowhere in the SAC, inviting the Court to conduct an aural comparison against the pleading. (Mot. at 3–4.) That is extrinsic factual material offered to contradict the complaint — exactly what a court may not rely upon at this stage. *Ritchie*, 342 F.3d at 907–08; *Khoja*, 899 F.3d at 998–1003. Whether the Beat samples the Kirigaya work at all, whether any such use was authorized, and which elements Gerreaux contributed are quintessential fact questions requiring discovery — the building blocks of an affirmative defense, not a pleading defect. *Scott*, 746 F.2d at 1378. Even on Sony's own framing, 17 U.S.C. § 103(b) would at most limit the scope of protection to Gerreaux's contributions — and the elements the SAC identifies (the keyboard/synthesizer loop, bass line, and drum pattern of a beat Gerreaux composed) are alleged to be his. Sorting contributions is summary judgment work, on a record. It is not a basis for dismissal.

F. In the Alternative, Leave to Amend Should Be Granted.

Plaintiff maintains that the SAC is sufficient as pleaded. If the Court concludes otherwise in any respect, leave to amend should be freely given. Fed. R. Civ. P. 15(a)(2); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th

Cir. 2003); *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015). The SAC is Plaintiff's first pleading to advance the note-or-memorandum theory, and amendment would not be futile: among other things, Plaintiff could plead the September 22 and 28, 2019 emails verbatim and in full, and could add further detail regarding Gerreaux's email account and its use in his music business. Sony's request for dismissal without leave to amend — aimed at a complaint that did what the Court's Order invited — should be rejected.

## V. CONCLUSION

Sony asks this Court to hold that a producer who negotiated the price of an exclusive license in writing, took and kept the money, and then confirmed in writing that his beat was "sold" somehow never signed anything at all. The Ninth Circuit's rule "is really quite simple," *Effects*, 908 F.2d at 557 — and so is this case. Gerreaux put the transfer in writing twice, days apart, in emails he personally composed and sent under his own professional name. The Court asked for "a valid signature attributable to Gerreaux"; the Second Amended Complaint supplies two. The Motion to Dismiss should be denied. In the alternative, Plaintiff requests leave to amend.

Dated: September 3, 2026 LAW OFFICES OF LARRY ZERNER

By: /s/ Larry Zerner
Larry Zerner
Attorneys for Plaintiff Shamar Deal