**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHAMAR DEAL,<br>Plaintiff,<br>v.<br>GERALD HENRY, et al.,<br>Defendants. | Case No. 2:25-cv-05872-AB-E<br><br>**ORDER GRANTING DEFENDANT SONY MUSIC ENTERTAINMENT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AND THEREFOR MOTION TO BIFUCATE DISCOVERY IS MOOT [DKT. NOS. 91 & 92]** |

Pending before the Court is Defendant Sony Music Entertainment's ("Sony") Motion to Dismiss ("Motion," Dkt. No. 91). Plaintiff Shamar Deal ("Plaintiff") filed an Opposition ("Opp'n," Dkt. No. 97), and Defendants Sony Music Entertainment and Empire Distribution, Inc. ("Empire") (collectively "Defendants") filed their Reply ("Reply," Dkt. No. 101 and Dkt. No. 100, respectively). The Court heard oral argument on October 2, 2026. For the following reasons, the Motion to Dismiss is **GRANTED.**

## I. BACKGROUNG

The following allegations are drawn from Plaintiff's Second Amended Complaint ("SAC", Dkt. No. 79). For purposes of the present motion, the Court accepts all well-pleaded facts as true.

/ / /

### A. Factual Background

Plaintiff Shamar Deal is a songwriter, recording artist, and performing artist. SAC ¶ 2. In or around 2019, Defendant Gerreaux composed a sound recording titled "Youu" (the "Beat"). *Id.* That same year, Defendant Gerreaux uploaded the Beat to Traktrain.com, a platform that allows musicians to buy and sell music. On September 23, 2019, Plaintiff entered into a written license agreement with Defendant Gerreaux through the website (the "Agreement"), pursuant to which Plaintiff obtained a ten-year exclusive license to record vocals over the Beat, create a master recording, and exploit that recording. *Id.* Under the Agreement, Plaintiff held the exclusive right to use the Beat to create new recordings during the license term. *Id.*

Notwithstanding this exclusivity, Defendant Gerreaux subsequently licensed the Beat to Defendants Register and Hayes, who used it as the underlying instrumental in their song "Ron Artest." SAC ¶ 3. The song achieved substantial commercial success, gaining over 96 million streams on Spotify and more than 16 million views on YouTube to date. SAC ¶ 14.

Defendants Register and Hayes later licensed a sample of "Ron Artest", which prominently features the Beat, to Defendant Carter. Defendant Carter used that sample to create a new song titled "Never Lose Me," along with at least five additional versions. *Id.* ¶¶ 14–15. Collectively, the six versions of "Never Lose Me," all of which incorporate the Beat, have achieved even greater success than "Ron Artest," generating approximately 650 million streams on Spotify and over 50 million views on YouTube. *Id.* ¶ 15.

Defendants Carter, Gerreaux, Register, and Hayes are all credited as co-songwriters on "Never Lose Me," with Defendant Gerreaux additionally credited as the producer. *Id.* ¶ 15. Plaintiff alleges that Defendants never obtained permission to use the Beat in "Ron Artest" or in any version of "Never Lose Me." *Id.* ¶ 16. Both songs are widely available to the public on major streaming platforms, including Spotify, iTunes, and YouTube Music. *Id.* ¶ 16.

With respect to distribution, Defendants Gerreaux, Register, and Hayes entered into an agreement with Empire Distribution to distribute "Ron Artest," and Empire carried out that distribution across digital platforms. *Id.* ¶ 16. Similarly, Defendants Gerreaux, Register, Hayes, and Carter entered into a distribution agreement with Sony for the various versions of "Never Lose Me," which Sony then distributed on major platforms. *Id.* ¶ 16-17.

Plaintiff further alleges that, through their exploitation of "Ron Artest" and "Never Lose Me," Defendants have collectively earned an excess of $1 million to date. *Id.* ¶ 17.

**B. Procedural Background**

Plaintiff filed suit on June 27, 2026. Dkt. No. 1. The copyright for the "sound recording" of the Beat was registered with the U.S. Copyright Office in 2025, receiving registration number SR 1-035-649, with an effective date of April 11, 2025. *Id.* ¶ 13. The copyright for the "music" of the Beat was then registered with the U.S. Copyright Office in 2025, receiving registration number PA 2-556-422, with an effective date of August 22, 2025. Case No. 2:25-cv-11781, Dkt. No. 1 ("Second Action Complaint") ¶ 13.

Subsequently, on August 25, 2025, Plaintiff filed his First Amended Complaint in Case No. 2:25-cv-05872-AB-E (the "First Action"), asserting a claim for infringement of an alleged sound recording copyright. ("FAC", Dkt. No. 20). Thereafter, on December 12, 2025, Plaintiff filed a separate action in this Court, Case No. 2:25-cv-11781 (the "Second Action"), asserting infringement of the alleged musical composition copyright based on the same underlying works.

The Court subsequently consolidated the two actions. Dkt. No. 43. Following consolidation, Plaintiff's operative pleadings asserted two categories of copyright infringement claims: (1) infringement arising from the song "Ron Artest" against Defendants Gerreaux, Register, Hayes, and Empire Distribution; and (2) infringement arising from the song "Never Lose Me" against Defendants Gerreaux, Register, Hayes,

Carter, Sony Music Entertainment, and Empire Distribution. FAC at 8–11.

On April 17, 2026, Defendants Sony Music and Empire filed a Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint. Dkt. No. 50. On June 30, 2026, the Court entered an Order granting, with leave to amend, Defendant Sony Music's and Empire's Rule 12(b)(6) Motion to Dismiss the FAC on the grounds that the alleged license is not signed by Defendant Gerreaux or a duly authorized agent ("Order", Dkt. No. 78"). On July 21, 2026, Plaintiff filed the SAC (Dkt. No. 79) and on August 14, 2026, Defendant Sony filed the present Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), seeking dismissal of Plaintiff's Second Amended Complaint. Dkt. No. 91.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 8(a)(2) requires a plaintiff to present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough facts "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The complaint must provide the "grounds" of their "entitlement to relief." *Id.* (cleaned up). Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Id.* The complaint must also be "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When considering a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Generally, a court cannot consider evidence outside of the pleadings. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003); *see also Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996) (holding that a Rule 12(b)(6) motion "must be treated as a motion for summary judgment" if either party "submits materials outside the pleadings in support or opposition of the motion, and if the district court relies on those materials"). However, a court may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice." *Ritchie*, 342 F.3d at 908.

## III. DISCUSSION

### A. Plaintiff's Standing to Sue for Copyright Infringement

"The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law." 17 U.S.C. § 201(d)(1). The Copyright Act established that, "[a] transfer of copyright ownership … is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C.A. § 204(a). The Ninth Circuit has held that "no magic words must be included in the document," which "doesn't have to be the Magna Carta; a one-line pro forma statement will do." *Radio Television Espanola S.A. v. New World Entm't Ltd.*, 183 F.3d 922, 927 (9th Cir. 1999) (citations omitted). "Rather, the parties' intent as evidenced by the writing must demonstrate a transfer of the copyright." Id. "The rule is really quite simple: If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so." *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990).

Plaintiff contends that he entered into an agreement with Defendant Gerreaux for a ten-year exclusive license to the Beat but several years later, Defendant Gerreaux

licensed the Beat for inclusion in "Ron Artest" and "Never Lose Me", infringing Plaintiff's exclusive right to the beat. SAC ¶ 2-3. While Plaintiff admits that Defendant Gerreaux did not physically sign any agreement transferring rights to the Beat, he contends that Gerreaux signed such agreement electronically, pursuant to the Electronic Signatures in Global and National Commerce Act, 15 U.S.C. § 7006(5). SAC ¶ 11.

According to Plaintiff, Gerreaux posted the Beat on TrakTrain and on September 22, 2019, Plaintiff emailed Gerreaux stating his interest in buying the exclusive license to the beat and asking Gerreaux for clarification on the price. SAC ¶ 7-8. According to Plaintiff, Gerreaux responded stating he would "change it to $200 right now" and thereafter set the $200 price for Plaintiff's purchase of the exclusive license to the Beat. SAC ¶ 8. That same day, Plaintiff alleges he purchased the exclusive license to the Beat through TrakTrain's website, paying $200 through Stripe in a transaction marked as TrakTrain Order No. 108936. SAC ¶ 8. Plaintiff received a written confirmation of the transaction from TrakTrain that same day, stating "thank you for your purchase!" and "you have purchased the exclusive rights". SAC ¶ 8-9. Plaintiff contends that TrakTrain sent Gerreaux a written confirmation of the sale through email, notifying him in writing that he had sold the exclusive rights to the Beat to Plaintiff for $200. SAC ¶ 9. On September 28, 2019, Plaintiff alleges that he emailed Gerreaux reminding him to mark the Beat as sold given his purchase. SAC ¶ 11. Plaintiff alleges that Gerreaux responded stating he "didn't see the notification because the payment was through Stripe, but yes! I just changed the status to sold!" and proceeded to mark the TrakTrain listing as "sold". SAC ¶ 11.

Plaintiff further alleges that TrakTrain generated a written license agreement titled "Gerreaux – Youu: Exclusive License Agreement for TrakTrain Order #108936" (the "License Agreement"), which identifies Gerreaux as the "Licensor", Plaintiff as the "Licensee", and states a ten-year term for the license. SAC ¶ 9-10. The License Agreement is signed by Nick George, the alleged owner and operator of TrakTrain. SAC ¶ 10.

Defendant Sony contends that the Agreement between Plaintiff and Defendant Gerreaux (on which Plaintiff bases his claimed rights in the Beat) was never signed by Defendant Gerreaux. Motion ¶ 2. Instead, the Agreement was signed by Nick George, the purported operator of TrakTrain. Motion ¶ 3. Defendant Sony further argues that Plaintiff does not allege George was Gerreaux's duly authorized agent. Sony Reply ¶ 2. Accordingly, Defendant Sony asserts that the absence of a license signed by Gerreaux or his authorized agent is a fatal defect that deprives Plaintiff of standing to pursue this action. Sony Reply ¶ 3.

Plaintiff alleges that in order to sell beats on TrakTrain, a producer must create an account, upload beats, designate the type of licensed offered for each beat, and set the price. SAC ¶ 6. Plaintiff claims that, by composing the Beat and uploading it to TrakTrain, listing the Beat for sale on an exclusive basis, setting the price and connecting his Stripe account to TrakTrain, and accepting payment from Plaintiff, Gerreaux executed and adopted the Agreement electronically. SAC ¶ 10-11. Plaintiff further alleges that Gerreaux's September 22, 2019 and September 28, 2019 emails, individually and collectively, constitute a memorandum of the transfer of exclusive rights in writing and signed within the meaning of 17 U.S.C. § 204(a). SAC ¶ 12. Plaintiff also puts forth an alternative argument that, by the conduct described above, Gerreaux ratified and adopted the Agreement. SAC ¶ 12.

The Court disagrees. The Court does not dispute that electronic agreements may satisfy § 204(a)'s writing and signature requirements under the E-SIGN Act. See *Sisyphus Touring, Inc.*, 208 F. Supp. 3d at 1113. The issue, as the Court raised in its previous Order, is the absence of any signature attributable to Gerreaux. Accordingly, the Court's analysis turns on the narrower question of whether Gerreaux's alleged conduct, absent any signature or allegation of agency, is sufficient to demonstrate that he "executed or adopted" the electronic record with the intent to sign the License Agreement, as required to satisfy § 204(a).

The Court is not persuaded that Gerreaux's alleged conduct satisfies the standard required to demonstrate that he executed or adopted the electronic record with the intent to sign. Courts have consistently rejected arguments that an unsigned agreement, combined with surrounding conduct, is sufficient to satisfy § 204(a). In *Crispin v. Christian Audigier, Inc.*, the court held that an unsigned written agreement, even when coupled with the plaintiff's acceptance of payment, was insufficient as a matter of law to meet § 204(a)'s requirement of a signed writing. 839 F. Supp. 2d 1086, 1092 (C.D. Cal. 2011). There, although a "Commissioned Artwork/Work for Hire Agreement" had been prepared, the plaintiff never signed it, and the endorsed checks bore no legend referencing the copyrighted work. *Id.* at 1090–91. The court therefore concluded that the alleged transfer did not comply with § 204(a) and was unenforceable. *Id.* at 1091–92. Similarly, in *Valente-Kritzer Video v. Pinckney*, the Ninth Circuit held that a copyright owner's attorney could not, without the client's signature or express authorization, memorialize a transfer through correspondence alone. 881 F.2d 772, 775 (9th Cir. 1989). These authorities underscore that § 204(a) requires some signed writing attributable to the copyright owner manifesting intent to transfer.

While the emails exchanged may support Plaintiff's allegation that Gerreaux intended to sell the Beat exclusively to Plaintiff, they do not resolve the defect identified by the Court in the previous Order. At most, the exchange reflects Gerreaux's acknowledgment that Plaintiff had purchased the Beat and that its status on TrakTrain should be updated. That acknowledgment, however, is distinct from manifesting assent to the specific written instrument on which Plaintiff's standing depends. Accordingly, the emails do not cure the deficiencies in Plaintiff's allegations under § 204(a).

As a result, the Court's analysis necessarily turns to Gerreaux's own alleged conduct. Plaintiff argues that Gerreaux adopted the Agreement by uploading the Beat to TrakTrain, listing it for exclusive license, setting the purchase price, accepting payment through Stripe, and permitting TrakTrain to generate the written License Agreement. Although the Court agrees that electronic agreements may satisfy § 204(a),

the Court is not persuaded that these allegations, standing alone, plausibly demonstrate that Gerreaux executed or adopted the specific electronic record with the intent to sign it. Unlike the writings at issue in *Sisyphus Touring*, nothing alleged in the SAC links Gerreaux to the execution or adoption of the Agreement itself. At most, Plaintiff alleges conduct consistent with using the TrakTrain platform—not conduct demonstrating assent to the particular written instrument on which Plaintiff's standing depends. Because Plaintiff has failed to plausibly allege either that George was authorized to bind Gerreaux or that Gerreaux himself executed or adopted the Agreement within the meaning of § 204(a), Plaintiff has failed to allege the existence of a valid transfer or exclusive license sufficient to confer standing. The Motion is therefore **GRANTED**.

**B. Failure to Provide Adequate Notice**

The Court does not reach the merits of Defendant Sony's Rule 12(b)(6) arguments regarding the sufficiency of Plaintiff's infringement allegations, as the SAC is dismissed on standing grounds for the reasons set forth above.

**C. Leave to Amend**

The remaining question is whether Plaintiff should receive further leave to amend his copyright infringement claims.

Leave to amend should ordinarily be granted unless amendment would be futile. See *Foman v. Davis*, 371 U.S. 178, 182 (1962). Nevertheless, leave need not be granted where amendment cannot cure the legal deficiency. *Id.*

Plaintiff has already received leave to amend his FAC after the Court identified the absence of allegations establishing that Gerreaux signed to him exclusive rights to the Beat, in writing. For the reasons discussed above, the SAC fails to cure this deficiency, which is necessary to establish Plaintiff's standing to sue for copyright infringement.

Because Plaintiff concedes that there is no written license agreement with Gerreaux' signature, and because Plaintiff failed to establish that Gerreaux plausibly adopted and executed the Agreement through his conduct, further amendment of the

copyright infringement claims would be futile.

Thus, Plaintiff's claims are dismissed ***without*** leave to amend.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's SAC with prejudice is **GRANTED**. This case is therefore **DISMISSED *without* leave to amend**. Furthermore, Defendant Sony's Motion to Bifurcate Discovery (Dkt. No. 92) is **MOOT**.

Defendants must file a proposed Judgment within ten (10) days of the issuance of this Order. Plaintiff will have five (5) days thereafter to file any objections.

**IT IS SO ORDERED.**

Dated: November 6, 2026

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT JUDGE